## George Sauder, Appellee, v. Richards Manufacturing Company, Appellant.

### Gen. No. 5535.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence where not clearly and manifestly so.

2. INSTRUCTIONS—*must not ignore material fact.* In an action by a servant against his master for personal injuries, *held,* that an instruction was erroneous which ignored evidence which showed that such servant had been shown by a foreman how to do the particular work in question and had been told to do it in that manner and had followed such instruction.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911. *Certiorari* denied by Supreme Court (making opinion final).

MURPHY & LYON, for appellant.

JOHN M. RAYMOND and JOHN K. NEWHALL, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

On July 14, 1909, George Sauder was running a punch press in the machine shop of Richards Manufacturing Company, in the city of Aurora, in Kane county, and while so engaged, had two of the fingers of his left hand caught in the machinery and amputated. He brought this suit against Richards Manufacturing Company to recover damages for said injuries and, upon a jury trial, received a verdict and a judgment for $1,500, from which defendant below appeals.

The punch press, on which appellee was working at the time of the injury complained of, consisted of an upper and a lower die and a foot lever, which, being

pressed by the foot, caused the upper die to descend and thereby any plate, inserted between the two dies, would be pressed into the desired shape and pattern. Upon removing the foot from the lever, the upper die would ascend to its proper position and remain there until the foot lever was again pressed. The steel plate, which was to be pressed into shape by the press, could be put into position by placing it against the gauge on the side of the lower die and, as the lower die was permanently fixed in an inclining position, the steel plate would at once drop, of its own weight, down against the back gauges. But, after the plate had been pressed and the upper die had resumed its proper elevated position, it was necessary to remove the plate and this could be done, according to the evidence, in three ways. It could be knocked out of the machine with the next steel plate which the operator was about to place on the die; it could be taken out by means of a metal hook; and it could be taken out by hand. The operation of placing the steel plate in the machine against the side gauge did not require the hand of the operator to go under the upper die at all, but the process of removing the pressed plate from the machine by hand required the operator to place his hand under the upper die, and it was in this way appellee was injured.

When appellee went to work for appellant, he was taken in charge by Patterson, appellant's foreman, and put to work on a punch press. Appellee testified that the foreman showed him how to operate a punch press and, in so doing, used his hands for the various operations; that is, the foreman put a plate of steel in on the lower die with his right hand, stepped on the lever, and then removed the plate with his left hand, and told appellee that that was the way to operate the machine. This testimony by appellee as to the instructions he had received from the foreman is not denied. Appellee continued to work on a punch press up to

the time of his injury and, so far as the evidence shows, continued to operate it in the manner in which he had been instructed by the foreman. On the 13th of July, 1909, the day before appellee was injured, he noticed a jerking motion of the press he was operating and called the attention of the foreman to it. Appellee testified that the foreman then tried the machine himself and then said to appellee: "We cannot stop to repair it now, we are so busy. We will repair it as quick as we can get around to it;" and then told appellee to go ahead with his work and went away. Appellee continued to work with this press the rest of that day and until about nine A. M. of the next day, when he was injured. The undisputed evidence is that, at the time he was injured, appellee did not have his foot on the lever which operated the press.

Appellant claims that appellee was guilty of such contributory negligence in removing the steel plates with his hand that he cannot recover; that, with the machine running fast enough to stamp 600 or 700 steel plates an hour, as it was at the time of the injury, appellee must have known that he was sure to be injured if he attempted to remove the plates with his hand; and that, before the injury, appellee had been instructed by the foreman to cease the use of his hand in the removal of the plates. Appellee claims, as before stated, that he was instructed by the foreman, at the beginning of his service with the company, to put in and remove the plates by hand. Appellant claims that its foreman instructed the appellee, before he was injured, that the use of the hand in removing the plates was dangerous and that he should use a hook. Appellee's claim as to his instructions from the foreman is not denied. Appellant's claim is denied by appellee. It therefore became a question of fact for the jury to decide what were the instructions given appellee by appellant, and the jury seem to have believed appellee. In view of the fact that appellant's foreman

did not deny having instructed appellee to remove the plates with his hand, we cannot say that the jury decided this point against the weight of the evidence. Again, while appellant's witnesses testified that appellee should have poked the steel plates out of the machine with the hook or with other plates and allowed them to fall upon the floor, to be removed from there by laborers hired for that purpose, appellee testified that he had been provided with a barrel in which to place the pressed plates and that the top of the barrel being higher than the machine, it was necessary for him to pick out the plates with his hands, so that he might throw them into the barrel, and the jury have decided this question of fact in appellee's favor. The evidence on this point was evenly balanced as to the number of witnesses, and we cannot say that the jury disregarded the greater weight of the evidence.

It is contended by appellant that, even if it be true that the foreman, when notified of the defect in this particular machine, had instructed appellee to proceed with his work on a promise to have the machine repaired as soon as they "could get around to it," still this could only be regarded as permission to appellee to use the machine for as long a time as would reasonably be required to repair the machine, and that, as the machine was repaired in one hour's time after appellee was hurt, therefore appellee should have used the machine only one hour and no longer and that his operation of the machine for nearly twenty-four hours after he discovered it defective was at his own risk and he cannot recover. While it may be true, as contended by appellant in its brief, that, "where the danger of operating a machine is open and obvious, and can be seen, known and understood by the operator of such a machine, then the doctrine of assumed risk will bar a recovery by such servant, notwithstanding the master's promise to repair," the proof here does not justify the application of such a

principle of law in this case. Appellee was not a machinist and had no duty imposed upon him of inspection and repair of these presses. That part of the mechanism of this machine which was out of order was inclosed in an iron box and appellee could not and did not see it. He had therefore no reason to know that he was liable to be hurt by reason of the jerking motion of the machine and no reason to believe that the upper die would slip and fall while his foot was not on the lever. The evidence showed that the upper die had never before fallen and that appellee's foot was not on the lever at the time the accident occurred. While appellee knew that men had been hurt in that shop, there is nothing in the evidence to show that he knew that they had been hurt in that way, nor that such men had, in fact, been hurt in that way at any time. The answer of the foreman to appellee, when complaint was made of the machine, indicated that it was not to be repaired at that time, but at some future time when they were not so busy, and his telling appellee to go on with his work was an assurance by the master that he could safely do so, and appellee was justified in continuing his work under such permission, unless the danger was so obvious that no man, in the exercise of ordinary care, would have worked with the machine in that condition.

As we have shown above, the danger was not obvious and appellee had no reason to suppose that this particular trouble in the machine would cause the upper die to fall. The upper die did not fall, in fact, at all during the rest of the day on which he complained of the machine and there is nothing in the record to show that appellee knew the machine had not been repaired between the stopping of work that afternoon and the commencement of work the next morning. It was a question for the jury whether the danger was so obvious that appellee should not have continued to work with this machine in spite of the permission given by the foreman, and the jury have decided against the

contention of appellant. Appellant complains of the action of the trial court in refusing to give certain instructions, requested by appellant. Appellant's first refused instruction was as follows:

"You are instructed that if you believe from all the evidence that there were two methods open to the plaintiff for the performance of the work for which he was employed, one of which was dangerous and the other safe; and if you further believe from the evidence that the dangerous way of performing the work was the easier and more simple that fact alone would not justify the plaintiff in selecting the dangerous method of doing the work. The plaintiff, in the exercise of ordinary care and caution, was bound to select that method of performing the work which would insure to him the greater safety, and this even though the safer method involved considerable more trouble than the dangerous way in performing the work.''

We consider this instruction clearly bad, for it entirely ignores the evidence showing that appellee had been shown by the foreman, Patterson, how to do the work and had been told by him to do it in that manner. The instruction should have left it to the jury to determine whether one method or the other of doing the work had been explained to the appellee and its use urged upon him. The same criticism applies to appellant's second and third refused instructions, in that they make no sufficient reference to that portion of the evidence which tended to show that appellant had directed appellee to perform his work in a certain manner. These last mentioned instructions state the case as if appellee had voluntarily selected the method most dangerous of putting his hand under the die to take out the plate, whereas he testified that he was shown and directed by the foreman to do it that way, and this evidence was met, not by a denial that such directions were given him when he commenced to work for appellant, but by testimony on the part of the foreman that at a later date the foreman told appellee not to put his hand under the die but

to remove the plate in another way, and this was denied by appellee in rebuttal. Therefore both sides claim that appellee had directions from the master before this injury as to the manner in which he was to perform his work, but they disagree as to what those directions were, and these two refused instructions practically failed to leave it to the jury to determine whether he had received the instructions he claimed or those which appellant claimed to have given him. We think therefore that they were properly refused. Under the evidence the jury must find, either that appellee received instructions from the master to use his hands in doing the work and obeyed such instructions and was thereby injured, or that he received instructions at a later date and before the injury to refrain from using his hands and disobeyed such instructions and, as a result of such disobedience, was injured.

These three instructions did not submit that question to the jury at all, but sought to make the case turn upon the question whether or not the servant, without any instructions, voluntarily chose the more dangerous way of doing the work. This does not conform to the evidence, for there is no dispute but what he did receive some instructions. The question is, what were those instructions, and that question is ignored by these refused instructions.

The action of the trial court in refusing to give appellant's eighth instruction is also complained of, but we see no merit in that contention, for all the material and essential parts of the refused instruction are contained in appellant's eighth given instruction. Plaintiff's only given instruction was faulty, under Elgin, Joliet & Eastern Ry. Co. v. Lawlor, 132 Ill. App. 280, but no point is made upon it here by appellant and we therefore ignore it.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*